UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In Re:

    CASEY HOLTSLANDER,                    Chapter 13
                                                                     Case No.: 13-60083

                            Debtor.

APPEARANCES:

PETER A. ORVILLE, ESQ.
*Attorney for Debtor*
30 Riverside Drive
Binghamton, New York 13905

Nasto Law Firm                                   MICHAEL B. OSHINS, ESQ.
*Attorneys for Secured Creditor AmeriCU Credit Union*   JOHN A. NASTRO, ESQ.
4957 Commercial Drive
Yorkville, New York 13495

MARK W. SWIMELAR, ESQ.                  MAXSEN D. CHAMPION, ESQ.
*Standing Chapter 13 Trustee*
250 South Clinton Street, Suite 203
Syracuse, New York 13202

William K. Harrington, Esq.                    GUY A. VAN BAALEN, ESQ.
*United States Trustee for Region 2*
Office of the United States Trustee
10 Broad Street, Room 105
Utica, New York 13501

Honorable Diane Davis, United States Bankruptcy Judge

**MEMORANDUM-DECISION AND ORDER**

This matter is before the Court upon the objections filed by the Chapter 13 Trustee ("Trustee") and AmeriCU Credit Union ("AmeriCU") to the motion and proposed post-confirmation modified chapter 13 plan filed by Casey Holtslander ("Debtor") under 11 U.S.C. § 1329.[1] The objections concern Debtor's proposed post-confirmation use of post-petition

---

[1] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (2010) (the "Bankruptcy Code").

insurance proceeds from an automobile casualty insurance policy designating AmeriCU as the sole loss payee.

After conducting a hearing on the parties' objections on November 7, 2013, the Court permitted the parties to file post-hearing briefs, and the Court then took the matter under advisement. For the reasons stated below, the objections are overruled and Debtor's motion to modify her chapter 13 plan is granted.

## JURISDICTION

The Court has jurisdiction over this core matter pursuant to 28 U.S.C. §§ 1334(a), (b)(1), 157(a), (b)(1), and (b)(2)(A), (L), and (O).

## FACTS

On January 23, 2013, Debtor filed a voluntary petition for relief under the provisions of chapter 13 of the Bankruptcy Code. (ECF No. 1.) Debtor's chapter 13 plan filed with the petition provided for 60 monthly payments in the amount of $453.00, a 10% repayment to general unsecured creditors, the retention of secured creditors' liens, and cramdown of AmeriCU's claim secured by Debtor's 2006 Chrysler 300-series sedan (the "Vehicle") to bifurcate the claim into its secured and unsecured portions, thereby limiting AmeriCU's secured claim to $10,000.00 payable at a 5% interest rate, or the present value of the collateral rather than the entire contract debt due. (ECF No. 2.) According to AmeriCU's February 15, 2013 proof of claim docketed in the case as Claim Number 3, the total amount due to AmeriCU under the terms of a Retail Installment Contract ("Contract") as of the petition date was $16,190.03. On February 15, 2013, AmeriCU filed an objection to confirmation of Debtor's proposed chapter 13 plan stating, among other grounds, that the actual value of the Vehicle was $14,375.00. (ECF No. 12.) On April 2, 2013, Debtor filed a motion and amended chapter 13 plan changing both

the monthly payment term to $453.00 for 2 months and $495.00 for 58 months and the treatment of AmeriCU's claim to bifurcate and limit its secured claim to $12,000.00 payable at a 5% interest rate. (ECF No. 21.) By letter docketed April 3, 2013, AmeriCU withdrew its objection to confirmation based upon its satisfaction with the terms of Debtor's amended chapter 13 plan. (ECF No. 22.) On April 23, 2013, Debtor's amended chapter 13 plan was confirmed. (ECF No. 26.) As required by § 1325(a)(5), Section II(B) of the Order of Confirmation stated: "All secured creditors shall retain the lien(s) securing their claim(s) until the earlier of payment in full of the underlying debt determined in accordance with nonbankruptcy law or discharge of such claim under 11 U.S.C. § 1328." *See* 11 U.S.C. § 1325(a)(5)(B) (requiring lien retention as an essential element of chapter 13 cramdown). Section XI of the Order of Confirmation provided: "It is further ORDERED that the property of the estate shall not revest in Debtor until completion of the Plan."

AmeriCU is the assignee of the Contract under which Debtor purchased the Vehicle from Carbone Dodge City for $33,078.22. Debtor financed $23,505.30 of this amount at a 7% annual percentage rate over the course of 5 years. The Contract requires Debtor "to obtain and maintain insurance on the collateral, endorsed to protect [AmeriCU] as loss-payee." The Security Agreement also grants AmeriCU a security interest in the Vehicle. Under the section titled Insurance Requirements, the Contract provides for Debtor's agreement "that any insurance moneys payable by reason of damage to or loss of the vehicle shall be paid directly and solely to [AmeriCU] and may be used to pay any debt to [AmeriCU]."

Following confirmation, the Vehicle was totaled and Debtor's insurer issued a check in the amount of $14,190.32, which the Trustee is holding in escrow pending the Court's decision.

AmeriCU represents that it is owed $11,460.71 plus interest on the secured portion of its claim and $4,190.03 on the unsecured portion of its claim.

Debtor's proposed modified chapter 13 plan filed pursuant to § 1329 seeks in relevant part to fund the insurance proceeds into the estate and to have the Trustee pay the secured portion of AmeriCU's claim, with the balance to be used to pay administrative and secured creditors pro-rata. Given the removal of AmeriCU's claim from Debtor's chapter 13 plan, Debtor's proposed modified chapter 13 plan also seeks to excuse missed payments and reduce her monthly payment to $320.00 beginning retroactively in September 2013 and continuing for the 43 months remaining in the plan term.

The Trustee filed opposition to Debtor's proposed modified chapter 13 plan for the reason that Debtor failed to provide any legal basis to support the requested distribution of insurance proceeds to the estate and ultimately to creditors other than AmeriCU. AmeriCU opposes the same on the ground that its total claim exceeds the amount of the insurance proceeds and therefore the full insurance proceeds should be paid over to AmeriCU in accordance with the Security Agreement and New York law.

## ARGUMENTS

Both the Trustee and AmeriCU begin their opposition setting forth a principle that is unquestionably deeply embedded in bankruptcy jurisprudence, namely that property rights are created and defined by state law. *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Next, they both cite *In re Denario*, 267 B.R. 496 (Bankr. N.D.N.Y. 2001), for the proposition that "the owner of an insurance policy cannot obtain greater rights to the proceeds of

that policy . . . by merely filing a bankruptcy petition," *id.* at 499 (internal quotation marks and citations omitted). Continuing their alignment of legal arguments and supporting case law, both the Trustee and AmeriCU cite *In re Motto*, 263 B.R. 187 (Bankr. N.D.N.Y. 2001) (addressing a dispute between the trustee and a mortgagee over entitlement to credit disability insurance proceeds), for the proposition that "the overriding question when determining whether insurance proceeds are property of the estate is whether the debtor would have a right to receive and keep those proceeds when an insurer paid on a claim," *id.* at 193 (internal quotation marks and citations omitted). AmeriCU argues that notwithstanding Debtor's intervening bankruptcy and the events that have occurred therein, the bankruptcy estate does not have an interest in the insurance proceeds because they are payable to AmeriCU under the policy terms and, outside of bankruptcy, the full amount of the insurance proceeds would be applied to satisfy Debtor's indebtedness to AmeriCU.

Debtor asserts that the proceeds are property of the estate because they were derived from the post-petition destruction of the Vehicle, which was also property of the estate. Moreover, Debtor argues that because the Vehicle was destroyed post-confirmation after bifurcation of AmeriCU's claim, AmeriCU is bound by the res judicata effect of the Order of Confirmation, which valued AmeriCU's collateral and secured claim at $12,000.00. As a result, Debtor contends that AmeriCU is therefore only entitled to payment of the balance of the remaining secured portion of its bifurcated claim from the insurance proceeds while the estate is entitled to any excess proceeds. In support of her position, Debtor offers § 1327(a) and certain bankruptcy decisions involving the same or similar issue, including *In re Gibson*, 218 B.R. 900, 904 (Bankr. E.D. Ark. 1997) ("Bankruptcy courts considering [the issue of a loss payee's rights to insurance proceeds that are property of the estate] have found that upon post-petition destruction of

collateral, an undersecured creditor's interest in casualty insurance proceeds is limited by the confirmed Chapter 13 plan to the unpaid balance of its allowed secured claim.") (collecting cases), *In re Huff*, 332 B.R. 661, 668 (Bankr. M.D. Ga. 2005) (secured creditors with confirmed secured claims are entitled to payment from casualty insurance proceeds payable post-confirmation to the extent of their claims where they are named loss payees on the policies), and *Ford Motor Credit v. Feher (In re Feher)*, 202 B.R. 966, 970 (Bankr. S.D. Ill. 1996) (determining that the extent of the parties' interest must be made within the framework of the bankruptcy case since the dispute involves the competing rights of the debtors and a secured creditor to estate property). Notwithstanding that the facts of these cases are slightly different than those of the present case, Debtor contends that their respective holdings emphasizing plan confirmation and finality apply here with equal force.

## DISCUSSION

The outcome of this matter does not depend primarily on state law as AmeriCU has argued, but rather on issues that must be determined in the context of both state and federal law with a particular emphasis on the Bankruptcy Code provisions affecting AmeriCU's state law rights. *MacArthur v. Johns-Manville Corp.*, 837 F.2d 89, 92 ("Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."); *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512, 515 ("[S]ince [debtor] was involved in bankruptcy proceedings during the period relevant to this action [over the proper treatment of an insurance draft], we look to federal law to determine whether it sheds light on the correct disposition of the insurance draft."). The Court must examine three related issues in order to reach its ruling: (1) the extent of AmeriCU's interest in the insurance proceeds under state law; (2) whether the bankruptcy estate has an interest in the insurance proceeds; and

(3) the effect of the Order of Confirmation on the parties' respective interests in the insurance proceeds.

**1. AmeriCU's Interest in the Insurance Proceeds Under State Law**

AmeriCU argues that it is unequivocally entitled to the entire amount of insurance proceeds paid out by Debtor's insurer due to its status as the sole loss payee under the terms of Debtor's insurance policy, which was agreed upon by the parties as evidenced by the Security Agreement. Neither AmeriCU nor the Trustee, however, provide the Court with controlling New York law determining that the loss payable clause of the insurance policy gives AmeriCU a superior right or interest beyond that of a security interest or that makes the loss payable clause of the insurance policy the decisive factor in this case. Rather, state law provides a mere starting point to define AmeriCU's interest in the proceeds, which the Court must then consider in conjunction with §§ 1327 and 1329.

In most financing transactions involving personal property, including this one, the secured party will require the debtor to insure the collateral and name the secured party as the loss payee. 6MP2-9-104 UCC Reporter-Digest A2 (MB 2013) (discussing whether Article 9 extended to various types of insurance interests under former New York Uniform Commercial Code ("UCC") 9-104(g) and noting that prior case law remains relevant under current Article 9's parallel provision codified at New York UCC § 109(d)(8)). Article 9 of the New York UCC applies to casualty insurance proceeds where the secured party had a security interest in the insured collateral. N.Y. U.C.C. § 9-109(d)(8) (Consol. 2013); 1-3 Secured Transactions Under the UCC § 3.13 (MB 2014). By definition, "proceeds" under Article 9 of the New York UCC means "to the extent of the value of the collateral and to the extent payable to the debtor or the secured party, insurance payable by reason of the loss or nonconformity of, defects of

infringement of rights in, or damage to, the collateral." N.Y. U.C.C. § 9-102(a)(64)(E). A perfected security interest in the collateral will give the secured party a perfected security interest in the proceeds upon damage to or destruction of the collateral. Under Article 9, the secured party therefore does not have to be a named payee in order to have its security interest in the proceeds recognized. Joann Henderson, *Bankruptcy Disaster Relief: A Chapter 13 Debtor's Right to Use Insurance Proceeds to Repair or Replace Collateral*, 35 Gonz. L. Rev. 21, 41 (1999/2000) (thoroughly examining case law involving various factual scenarios within the chapter 13 context where disputes have arisen between debtors and creditors over proceeds payable from casualty insurance coverage including varied payee clauses and provisions). Under New York law, AmeriCU has a perfected security interest in the insurance proceeds upon damage to or destruction of the Vehicle.

**2. The Bankruptcy Estate's Interest in the Insurance Proceeds**

The filing of a bankruptcy petition creates a new legal entity in the form of the bankruptcy estate. 11 U.S.C. § 541(a). Section 541(a) broadly defines property of the estate as comprising of "property, wherever located and by whomever held: [including] (1) . . . all legal or equitable interests of the debtor in property as of the commencement of the case[,] . . . [and] (6) proceeds, product, offspring, rents, or profits of or from property of the estate . . . ." 11 U.S.C. §§ 541(a)(1), (6). "It is well established that a bankruptcy court has jurisdiction over all of the property of the debtor's estate, wherever located." *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 91 (2d Cir. 1988) (collecting cases), *cert. denied*, 488 U.S. 868 (1988).

With respect to insurance policies, courts have generally held that the policies themselves and the debtor's rights under the policies are property of the debtor's estate. *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d at 92 ("Numerous courts have determined that a debtor's

insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."). Whether the insurance proceeds are property of the estate, however, is a more complex question that depends upon the nature or type of insurance, the timing of the casualty loss, and the terms of the policy. Henderson, *Bankruptcy Disaster Relief, supra,* at 34–35.

Consistent with Article 9 principles, the Second Circuit adopted the "substitution approach" to determine whether casualty insurance policy proceeds are property of the estate or property of the debtor when the policy is payable to both the debtor and the secured party as co-payees. *Id.* at 44 (citing *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d 512). The Second Circuit rejected the district court's reliance on the former New York UCC provisions in making its underlying determination and instead held that New York law was not controlling as to the proper treatment of the insurance draft at issue in that case. *Bradt v. Woodlawn Auto Workers, F.C.U.*, 757 F.2d at 515 ("[S]ince [debtor] was involved in bankruptcy proceedings during the period relevant to this transaction, we look to federal law to determine whether it sheds light on the correct disposition of the insurance draft."). The Second Circuit continued to hold that "the insurance payment for repairs to an automobile that is property of the estate unquestionably is also property of the estate." *Id.* The conversion of the property from collateral to proceeds therefore did not alter the character of the property as property of the estate. "The emphasis of [*Bradt*] is on substitution (not the terms of the policy), giving like treatment to the proceeds as the substitute for collateral." Henderson, *Bankruptcy Disaster Relief, supra,* at 45.

This case, like *Bradt*, involves casualty insurance policy proceeds. This is a significant distinction in the view of the Court which distinguishes and makes inapplicable certain cases cited by the Trustee and AmeriCU involving credit life and disability insurance policies. *See In re Motto*, 263 B.R. 187 (Bankr. N.D.N.Y. 2001) (involving credit disability insurance proceeds).

Unlike casualty insurance policy proceeds, credit life and disability proceeds are generally held to be property of the creditor rather than property of the estate. *See* Henderson, *Bankruptcy Disaster Relief, supra,* at 37 (explaining and contrasting the reasons why creditors typically win in cases involving credit life and disability insurance but lose in cases involving casualty insurance). Notwithstanding the slight variation in facts regarding the loss payable clauses of the policies at issue in this case and in *Bradt*, the Court is bound by and agrees with the substitution theory espoused by the Second Circuit in *Bradt*. Moreover, because the Order of Confirmation in this case precludes the revesting of property of the estate at confirmation, the estate remains in place. Therefore, the insurance proceeds are property of the estate.

### 3. The Effect of the Order of Confirmation

Plan confirmation is a significant event in a Chapter 13 case. *In re Michael*, 699 F.3d 305, 315 (3d Cir. 2012). Section §1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The post-confirmation relationship between the debtor and creditors thus requires creditors to forgo certain rights in exchange for the debtor's promise to make payments under the plan. By withdrawing its objection to confirmation, AmeriCU accepted the bifurcation of its secured claim prior to confirmation of Debtor's amended chapter 13 plan. Pursuant to § 1325(a)(5)(B), AmeriCU's secured claim was fixed in amount and status and entitled to full payment once allowed. 11 U.S.C. § 1325(a)(5)(B). The effect of Debtor's bankruptcy and of the timing of the destruction of the Vehicle post-confirmation and post-bifurcation of AmeriCU's secured claim is that the estate acquired an interest in the Vehicle and an entitlement to the proceeds over and above the value of AmeriCU's secured claim.

Section 1329(a) allows only the debtor, the trustee, or the holder of an allowed unsecured claim to increase or reduce the amount of payments on claims of a particular class provided for by the plan, extend or reduce the time for such payments, or alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment on such claim other than under the plan. 11 U.S.C. § 1329(a)(1)–(3). Section 1329 does not permit modification of the plan to increase or reduce the amount of adjudicated claims. By preventing the debtor from reclassifying the claim of a secured creditor post-confirmation, § 1329 preserves the protections afforded to secured creditors by § 1325(a)(5)(B)(ii). *See Ruskin v. DaimlerChrysler Servs. N. Am. (In re Adkins)*, 425 F.3d 296, 301–303 (6th Cir. 2005) (citing *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528 (6th Cir. 2000)) (discussing equitable principles underpinning the Sixth Circuit Court of Appeals' prior holding in *Nolan* that in the Sixth Circuit's view prohibit debtors from surrendering collateral and reclassifying secured claims post-confirmation). It would be contrary to § 1329(a) and inequitable to allow AmeriCU to do that which Debtor is prohibited from doing, i.e., to increase or decrease the amount of its claim, the former of which is in effect what AmeriCU now seeks to do by claiming entitlement to the full amount of casualty insurance proceeds.

## CONCLUSION

Based on the foregoing, the Court concludes the following: (1) the casualty insurance proceeds derived from the post-petition destruction of the Vehicle are property of the estate; and (2) AmeriCU is bound by the Order of Confirmation and its security interest in the proceeds is therefore limited to the value of its post-confirmation secured claim. Accordingly, it is hereby

ORDERED, that Debtor's proposed modified chapter 13 plan treating the payment of insurance proceeds as a substitute for the Vehicle, utilizing a portion of the insurance proceeds to

pay AmeriCU's secured claim in full, retaining the surplus proceeds for the estate and distribution pursuant to the distribution scheme set forth in the Order of Confirmation, as modified herein, and reducing her monthly payment because of the payment and removal of the secured portion of AmeriCU's claim is permissible under § 1329(a)(1) and (3); and it is further

ORDERED, that Trustee's objection to Debtor's motion to modify her confirmed chapter 13 plan is overruled; and it is further

ORDERED, that AmeriCU's objection to Debtor's motion to modify her confirmed chapter 13 plan is overruled; and is it is further

ORDERED, that Debtor's motion to modify her confirmed chapter 13 plan pursuant to § 1329 is granted.

IT IS SO ORDERED.

Dated: March 20, 2014
      Utica, New York

                                            /s/Diane Davis_____
                                            DIANE DAVIS
                                            United States Bankruptcy Judge